# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**LANDRIA ADAMS,**

    **Plaintiff,**

v.                                                                       Case No. 8:07-cv-638-T-30TGW

**JIM COATS, Sheriff of Pinellas County,**
**in his official capacity, et al.,**

    **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss First Amended Complaint (Dkt. 23) and Plaintiff's Response in opposition to the same (Dkt. 24). The Court, having considered the motion and response, and being fully advised in the premises, determines that the motion should be granted in part and denied in part.

### Background[1]

On or about April 12, 2005, Pinellas County Sheriff's Deputy Christopher Taylor ("Taylor") and seven other members of a Special Weapons and Tactics ("SWAT") team entered a St. Petersburg, Florida home to execute a search warrant for MDMA and marijuana. Prior to entering the home, the SWAT team detonated three "flash bang" devices to disorient those inside. Upon entering the home, Taylor ordered Jarrell Walker ("Walker"),

---

[1] At the motion to dismiss stage, the Court must view the Complaint in the light most favorable to Plaintiff and construe all allegations in the Complaint as true. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).

who had been sleeping on a couch, to drop to the floor and lie on his stomach. Taylor was armed with a loaded Glock firearm and protected by a bulletproof shield, helmet, and body armor.

Plaintiff claims Walker complied with Taylor's request to lie on the floor. Nevertheless, Plaintiff claims that Taylor struck Walker with his boot and then fired two shots into Walker's back from between two and three feet away. Plaintiff alleges that Walker was unarmed at all times and that the shots were fired within twenty-five seconds of Taylor's entry into the home. According to Plaintiff, despite Taylor's claim that Walker appeared to be reaching for a firearm under the couch, an extensive search of the room failed to uncover a weapon. Approximately two hours after the shots were fired, and after receiving emergency surgery, Walker died as a result of the gunshot wounds. At the time of his death, Walker was nineteen years old and left behind a three year old son, Kamau Adams-Walker. Plaintiff Landria Adams, as personal representative of the estate of Jarrell Walker ("Plaintiff"), filed this lawsuit against Taylor, individually, and Jim Coats, in his official capacity as Sheriff of Pinellas County (together, "Defendants").[2] Plaintiff alleges Defendants' use of deadly force was unreasonable and excessive under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts a supplemental claim for wrongful death against Coats under the Florida Wrongful Death Act.

---

[2]Landria Adams is the mother of Kamau Adams-Walker.

On October 30, 2007, the court entered an Order granting in part and denying in part Defendant's Motion to Dismiss (Dkt. 18). The Order dismissed Count III but allowed Plaintiff to amend the Complaint to identify with sufficient detail (I) the policies, customs, and usages of the Pinellas County Sheriff's Office that caused the unconstitutional use of deadly force against Walker, (ii) the nature of the training that Coats failed to provide, and (iii) all potential beneficiaries of Walker's estate and their relationship to him in accordance with Section 768.21 of the Florida Statutes. Plaintiff has amended his Complaint, and Defendant again move to dismiss Count III.

## **Standard of Review**

A motion to dismiss is appropriate when it appears "beyond a reasonable doubt" that a plaintiff can prove no set of facts to support his claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court must view the complaint in the light most favorable to the plaintiff and construe the allegations in the complaint as true.  Hishon, 467 U.S. at 73.  Conclusory allegations "will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief . . ., [but] the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent." Quality Foods DeCentro America S.A. v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir.1983).  However, a plaintiff must do more than merely "label" his claims.  Blumel v. Mylander, 919 F. Supp. 423, 425 (M.D. Fla.1996).

**Discussion**

**I.      Count III**

In Count III of the First Amended Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983 for Defendants' alleged violation of the Fourth Amendment. Specifically, Plaintiff alleges the policies, customs, and usages of the Pinellas County Sheriff's Office caused Taylor to violate Walker's constitutional rights. Plaintiff claims the Pinellas County Sheriff's Office found Taylor's use of deadly force to be consistent with its official policies and procedures, but that such policies needed to be clarified regarding the use of deadly force. Alternatively, Plaintiff argues that the Sheriff's Office failed to provide sufficient training to Taylor in the appropriate use of deadly force. Plaintiff claims that prior incidents involving Taylor and negative reviews of his conduct by a supervisor made the need for such training obvious.

A municipality can only be liable under § 1983 if its policies and customs were the "moving force [behind] the constitutional violation." City of Canton, Ohio v. Harris, 109 U.S. 378, 385 (1989) (quoting Mondell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In other words, the very "execution of the government's policy or custom . . . [must] inflict the [constitutional] injury." Canton, 109 U.S. 378 at 385 (quoting Springfield v. Kibbe, 480 U.S. 257, 267 (1987)). There is no heightened pleading requirement for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) (claims against municipalities need only meet the notice pleading requirements of F.R.C.P. 8(a)(2)), and Plaintiff need not

detail the exact policy or custom that facilitated constitutional injury. See Noell v. White, 2005 WL 1126560, *6 (M.D.Fla. May 12, 2005).

Here, Plaintiff alleges that Sheriff's Office policy was the "moving force" behind the violation of Walker's constitutional rights. Even though Taylor shot the unarmed Walker twice in the back, the Sheriff's Office confirmed that Taylor followed Department policy and recognized the need to modify that policy. Defendant claims that Plaintiff again did not explain what specific policy or custom caused the deprivation of Walker's civil rights. However, Plaintiff correctly argues that Leatherman requires mere notice pleading to satisfy the pleading requirements of a §1983 "policy or custom" claim. The Court concludes that Plaintiff has satisfied this pleading requirement. Therefore, the Motion to Dismiss First Amended Complaint is denied as to the allegation that Sheriff's Office policy was the "moving force" behind the violation of Walker's constitutional rights.

A claim of a *lack* of training is analytically distinct from an assertion that *existing* Sheriff's Office "policy of custom" inflicted constitutional injury. Generally, the "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. 378 at 388. The question is whether the deliberate choice by municipal officials not to provide further training is so egregious that it rises to the level of "city policy" itself. Id. at 390.

A "failure to train" claim also has different pleading requirements than a standard "policy of custom" claim. See Noelle, 2005 WL 1126560 at *6. As noted in this Court's

previous order, a conclusory allegation that a sheriff "failed to train his agents and employees, without allegations as to what kind of training that he allegedly failed to provide, is insufficient to state a claim under § 1983." Id. Because a sheriff must be on notice of a need to train in order to make a deliberate choice not to do so, a plaintiff must allege: "(1) [the sheriff] knew of a need to train in a particular area, (2) he made a deliberate choice not to do so, and (3) this failure to train constitute[d] a custom or policy, which was the moving force behind the deprivation of Plaintiff's constitutional rights." Id. at *8 (citing Roy v. Johnson, 97 F.Supp.2d 1102, 1112 (S.D.Ala.2000)). It is also possible that a series of constitutional violations by individual actors puts a state entity on notice that further training is required. Id. at 390.

As before, Plaintiff's conclusory allegation regarding Coats' "lack of training" is insufficient to state a claim under § 1983. The Court is also unconvinced by the assertion that mere involvement in prior shooting incidents (without any determination of error) and minor criticisms by a supervisor *years* before Walker's death are somehow sufficient to state a claim for failure to train. Therefore, the Court concludes that the Count III "failure to train" claim should be dismissed with prejudice. However, the Court will again grant Plaintiff leave to amend his complaint to cure this defect.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Motion to Dismiss (Dkt. 23) is **DENIED in part and GRANTED in part** as set forth herein.

2.	Plaintiff shall have twenty (20) days to amend the First Amended Complaint to identify with sufficient detail the nature of the training that Coats failed to provide.

**DONE** and **ORDERED** in Tampa, Florida on January 31, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2007\07-cv-638.Adams 22.wpd